UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-22239-CIV-LENARD/GARBER

**JOSEPHINE MORA,**

    Plaintiff,

vs.

**JACKSON MEMORIAL FOUNDATION, INC.,**

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (D.E. 23) AND CLOSING CASE**

**THIS CAUSE** is before the Court on the Motion of Defendant Jackson Memorial Foundation, Inc. ("Defendant" or "JMF") for Summary Judgment ("Motion," D.E. 23), filed on June 30, 2008. (See also Defendant's Statement of Undisputed Facts in Support of its Motion for Summary Judgment ("Def. SOF," D.E. 24).) On August 1, 2008, Plaintiff Josephine Mora ("Plaintiff" or "Mora") filed her Response to the Motion ("Response," D.E. 41). (See also Plaintiff's Response to JMF's Statement of Facts ("Pl. SOF," D.E. 45).) On August 11, 2008, Defendant filed its corrected reply ("Reply," D.E. 51). Having considered the Motion, the Response, the Reply, and the record, the Court finds as follows.

  **I.**  **Background**

On August 27, 2007, Plaintiff brought this employment discrimination action against Defendant. (See D.E. 1.) Plaintiff then filed an Amended Complaint on October 8, 2007,

which is the operative pleading in this case. (See D.E. 2.) Plaintiff asserts the following claims: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and (2) age discrimination in violation of the Florida Civil Rights Act ("FCRA"). (See id.) Based on these claims, Plaintiff seeks back pay, front pay, liquidated damages equaling the amount of back pay, compensatory damages, and punitive damages. (See id. ¶¶ 25, 34.)

The following material facts are undisputed by the parties, unless otherwise noted. Plaintiff is a 63-year old female who, beginning on June 23, 2004, worked for Defendant for approximately two years as Community Outreach Manager of a program called the International Kids Fund ("IKF"), part of JMF. (See D.E. 3 ¶ 1; Def. SOF ¶¶ 1, 3, 5.) Plaintiff's primary responsibility was raising money for IKF. (Def. SOF ¶ 6.) Plaintiff reported directly to Maria Luisa Chea ("Chea"), although Rolando Rodriguez ("Rodriguez"), the President and Chief Executive Officer of JMF, has the final say in all hiring and termination decisions. (Def. SOF ¶¶ 2-4.) On April 3, 2006, Plaintiff was terminated by Defendant at the age of 62-years old. (See D.E. 2 ¶¶ 1, 11.)

According to Defendant, Plaintiff consistently failed to perform her duties competently and professionally, and Chea counseled Plaintiff on numerous occasions regarding her performance deficiencies. (Def. SOF ¶ 7.) Defendant supports its position by citing to the deposition testimony of Chea, Rodriguez, and Plaintiff, and exhibits, evidencing, inter alia, that (1) shortly after she began working for Defendant, Plaintiff inappropriately

2

contacted a donor; (2) during the course of her employment with Defendant, Plaintiff failed to submit timely and proper weekly reports to Chea; (3) Plaintiff was responsible for but failed to publish IKF's quarterly newsletter on time; and (4) in early 2006, Plaintiff failed to properly complete an application for an award for non-profit groups. (Def. SOF ¶¶ 7-15.)

Plaintiff denies that she failed her duties (see Pl. SOF ¶ 7), but does not deny that she contacted a donor without first consulting Chea, and that Chea and Rodriguez counseled Plaintiff regarding her contact with the donor (id. ¶¶ 9-10; Pl. SOF ¶¶ 8-10); in addition, Plaintiff does not deny that, at least on some occasions, she failed to provide timely weekly reports to Chea, and that Chea sent her an e-mail on April 29, 2005 admonishing her for late reports (see, e.g., D.E. 24-6); that Chea further admonished Plaintiff regarding the substance of the reports (see, e.g., D.E. 24-7); and that, on January 13, 2006, Chea told Plaintiff that she was disappointed with the work Plaintiff did for the award application (see, e.g., D.E. 24-8). (See Pl. SOF ¶¶ 8-13.) With regard to Defendant's assertion that Plaintiff was responsible for publishing IKF's quarterly newsletter on time but that the newsletter was often late (see Def. SOF ¶ 14), Plaintiff, citing to her own affidavit, asserts that her involvement in the IKF newsletter was secondary to her primary responsibility of fund-raising and, in any event, there was no set date or deadline for the newsletter to be produced. (Pl. SOF ¶ 14 (citing Declaration of Josephine Mora ("Mora Declaration," D.E. 45-2)).) Lastly, Plaintiff does not dispute that JMF had Mora and Chea meet with a corporate "coach" to attempt to improve Plaintiff's working relationship with Chea. (Def. SOF. ¶ 16; Pl. SOF ¶ 16.)

3

As documented in Chea's reports to Rodriguez and in e-mails, Chea notified Rodriguez about Plaintiff's various performance issues on several occasions, including on March 4, 2005, March 9, 2005, and May 15, 2005. (Def. SOF ¶¶ 17-19; see also D.E. 25-3; D.E. 25-4; and D.E. 25-5.)

On August 23, 2005, Chea formally evaluated Plaintiff's performance. (See D.E. 25-6.) Although Chea rated Plaintiff as "excellent" or "good" in several areas, Chea indicated that Plaintiff's attitude required improvement and that Plaintiff needed to be "more responsive to [the] needs of" her supervisor and to "projects that are not self initiated"; that Plaintiff needed to "use better judgment of when to bring issues and projects to supervisor for input and discussion"; and that Plaintiff was "very social and ha[d] a tendency to spend too much time with families and sharing success stories with JMF staff." (See id.) In a confidential memorandum to Rodriguez regarding Plaintiff's evaluation, Chea advised Rodriguez that, inter alia, managing Plaintiff was "a challenge," and that, although Plaintiff was "excellent and self motivated" in some areas, she was "not responsive [in other areas] and it feels like I'm pulling her teeth to get her to do things." (D.E. 25-7.) The memorandum concluded by stating that, "[i]n all fairness, [Plaintiff] deserves credit for being committed to the program, for being good with the press, for working independently and following through on most matters," and recommended a 5% raise for Plaintiff. (Id.)

Nonetheless, in January of 2006, after months of discussions with Rodriguez, Chea recommended that Rodriguez fire Plaintiff, as evidenced in a weekly report Chea sent to

4

Rodriguez on January 13, 2006. (Def. SOF ¶ 22; see also D.E. 25-8.) Rodriguez initially approved the decision to terminate Plaintiff. (Def. SOF ¶ 22.) Significantly, Plaintiff admits that she has no direct evidence that Chea discriminated against her on the basis of her age at any time, nor does she have any direct evidence of age discrimination by Rodriguez as of January 2006. (Pl. SOF ¶¶ 21-22.)

After two other JMF employees intervened on Plaintiff's behalf and convinced Rodriguez to transfer Plaintiff to a new position, Plaintiff was not terminated at that time, and she was given different responsibilities. (Def. SOF ¶ 23; Pl. SOF ¶ 23.) Plaintiff began working in the new position in or around March 2006. (Def. SOF ¶ 24.) In that first month of her new position, Plaintiff called in sick twice to work, without explaining the reasons to Rodriguez. (Def. SOF ¶ 26; Pl. SOF ¶ 26.)

On March 31, 2006, Rodriguez directed Plaintiff to assemble a proposal to send to a potential donor in connection with a proposed Art Basel event, and stressed in an e-mail to Plaintiff that the most important goal was "quality and impressiveness," because "Art Basel won't partner with anyone who is not top notch." (Def. SOF ¶ 27; see also D.E 25-11.) Plaintiff then provided Rodriguez with a draft of the proposal, which, according to Rodriguez, he was unhappy with because it contained several errors. (Def. SOF ¶ 28.) On April 4, 2006, Rodriguez e-mailed his concerns regarding Plaintiff's draft to the then Executive Administrator at JMF, Isabel Hernandez ("Hernandez"), and asked Hernandez to monitor Plaintiff's work because "what she had prepared . . . was very inadequate, and would

5

have been embarrassing to send." (D.E. 25-11.) Rodriguez further wrote that he suspected that Plaintiff "simply does not have adequate writing/preparation skills for the job," and that, unless his "impression change[d] quickly, [he] would need to eliminate [Plaintiff's] position" that week. (Id.) Rodriguez concluded the e-mail by stating that he would discuss with Hernandez whether Rodriguez would "do it before" he left, or have Hernandez "carry it out on [his] behalf on Friday." (Id.) Rodriguez made no reference to Plaintiff's age or her being too old for the job in the e-mail.

Later on the evening of April 4, 2006, at 6:01 p.m., Plaintiff e-mailed the proposal to the potential Art Basel donor. (See D.E. 25-12.) The proposal contained various errors, which Plaintiff does not deny; in fact, Plaintiff admitted in her deposition that she was embarrassed about the errors. (Def. SOF ¶¶ 30-31; see also D.E. 33-2 at 197-201.) At 11:05 p.m. that evening, Rodriguez, who was copied on the e-mail to the potential donor, e-mailed Plaintiff that the proposal had misspellings, and that it was "[v]ery embarrassing." (See D.E. 25-13.) In addition, at 11:06 p.m., Rodriguez e-mailed Hernandez to point out various errors in the proposal, and indicated that he had asked Plaintiff to correct the errors before sending the proposal to the potential donor. (See D.E. 25-12.) In addition, Rodriguez wrote, "I don't think I'll even wait for Friday. I need to plan with you how to make what we discussed happen. This makes me disgusted." (Id.) As with Rodriguez's previous e-mail to Hernandez, Rodriguez made no reference of Plaintiff's age or that she was too old for the job in the e-mail.

6

The next day, on April 5, 2006, Rodriguez entered Plaintiff's office and fired her. (Def. SOF ¶ 35.) According to Defendant, Rodriguez told Plaintiff during that conversation that her errors were unacceptable. (Id.) Plaintiff does not remember Rodriguez mentioning anything about the proposal sent to the potential Art Basel donor. (D.E. 33-2 at 305.) Instead, Plaintiff testified that when Rodriguez terminated her, he stated that he thought Plaintiff was a "nice lady," but that he needed "someone younger" whom he could pay less, and that he needed an "Elena"; "Elena" is Elena Quevedo ("Quevedo"), whom Rodriguez considers to be one of JMF's best employees, and whom Plaintiff herself admits is a good employee. (Def. SOF ¶¶ 36-37; Pl. SOF ¶¶ 36-37.) In addition, Plaintiff also testified that when Rodriguez terminated her, he told her that he "need[ed] somebody that is very computer savvy and a very good writer and this is not working out." (D.E. 33-2 at 305.)

Plaintiff does not present evidence that Rodriguez ever made any other age-related comments before Plaintiff was terminated, nor does Plaintiff present evidence that any other employee of Defendant made discriminatory comments regarding Plaintiff's age. (Def. SOF ¶ 36; Pl. SOF ¶ 36.)  Rodriguez is the only person whom Plaintiff accuses of age discrimination. (Id.)

Plaintiff has also filed deposition testimony from another former JMF employee, Delia Kennedy ("Kennedy"), who was fired by Defendant on August 11, 2006, and who is close friends with Plaintiff. (Def. SOF ¶¶ 38, 41.) Kennedy testified that she overheard the termination conversation from outside of Plaintiff's office on April 5, 2006. (Id. ¶ 38.)

7

During her deposition, Kennedy "directly quot[ed]" what she heard Rodriguez tell Plaintiff, namely, that: "I need someone younger that I can pay less to do the job, you are very old, you are very inept. What you should be doing is taking care of old people. They really need you. I need somebody younger that I can pay less and I can control." (D.E. 29-2 at 9-10.) Kennedy then added that she overheard Rodriguez say to Plaintiff that Plaintiff "didn't know how to do her job." (Id. at 11.)

Another former employee of JMF, Martha Lagarde ("Lagarde"),[1] also testified that, during a conversation amongst her, Quevedo, and Rodriguez on April 5, 2006 shortly after Plaintiff was fired, Rodriguez told her and Quevedo that Plaintiff was fired because things weren't "working out" and because Plaintiff "was too old to work [for Defendant] anyways." (D.E. 31-2 at 52-54.) Quevedo, however, testified that Rodriguez told her and Lagarde during that conversation that he fired Plaintiff because he was not content with her performance, that he needed someone with a different skill set -- specifically, better writing, communication, and computer skills -- and that he needed someone like Quevedo herself. (D.E. 30-2 at 21-22.) Quevedo testified that Rodriguez never said anything about Plaintiff like "she is too old to work here, we need somebody young." (Id. at 22.) Moreover, Rodriguez denies that he made any of the age-related comments that Plaintiff, Kennedy, and Lagarde attribute to him. (Def. SOF ¶ 44.)

At her own deposition, Plaintiff testified that she was not surprised that he fired her

---

[1] Lagarde was also terminated by Defendant, and, like Kennedy, is close friends with Plaintiff. (Def. SOF ¶ 42.)

8

because she knew Chea had been complaining about her, and she further testified that she was aware of the mistake she had made the day before. (D.E. 33-2 at 205-206.)

After her termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (See D.E. 2 ¶ 6.) The EEOC issued a letter of determination which stated that the EEOC "determined that the evidence obtained during the investigation establishes that there is reasonable cause to believe that [Plaintiff] was discharged because of her Age/62 in violation of the ADEA." (See D.E. 41-4.) The letter, however, does not support its conclusion with reference to any specific evidence, and is otherwise silent as to how the EEOC made this determination. (See id.)

## II. Defendant's Motion

In its Motion, Defendant does not argue that Plaintiff has failed to present direct evidence of age discrimination, but contends that, in light of the facts on the record, it has demonstrated by a preponderance of the evidence that no rational jury could doubt that Defendant fired Plaintiff regardless of her age. (See D.E. 23.)

In her Response, Plaintiff essentially argues that because she has presented direct evidence that she was terminated because of her age, and because Defendant does not contest that she has presented direct evidence of age discrimination, summary judgment must be denied. (See D.E. 41.) Plaintiff asserts that Defendant's concession that she has direct evidence of discrimination is itself sufficient to create a genuine fact issue necessitating trial. (See id.) In addition, Plaintiff argues that Defendant cannot now argue that it would have

9

fired Plaintiff regardless of her age because it failed to plead this affirmative defense in its Answer. (See id. at 7-8.)

In its Reply, Defendant contends that it did not waive its right to argue that it fired Plaintiff regardless of her age, and that Plaintiff's waiver argument is disingenuous, because Plaintiff has been aware of Defendant's argument throughout this litigation, as demonstrated by the fact that Plaintiff conducted substantial discovery into the issue of whether Rodriguez terminated Plaintiff because of her poor performance. (See D.E. 51.) Defendant further argues that Plaintiff has not and cannot rebut the specific facts on the record that support Defendant's argument that it would have fired Plaintiff regardless of her age. (Id.) In addition, Defendant argues that the Court may grant summary judgment despite Plaintiff's presentation of direct evidence, and that Plaintiff's direct evidence shows she was fired because of poor performance. (Id.) Finally, Defendant argues that the Court should disregard the EEOC's letter of determination in this matter. (Id.)

**III.    Analysis**

    **A.    Summary Judgment Standard of Review**

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court

has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that

there is a genuine issue for trial.'" Id. at 324; see also Fed.R.Civ.P. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio corp., 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Id. at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

### B. Plaintiff's ADEA Claim

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000).  Under the ADEA, a plaintiff bears the ultimate burden of proving that age was a determining factor in the employer's decision to fire her. Carter v. Miami, 870 F.2d 578, 581 (11th Cir. 1989).  In the summary judgment context, a plaintiff must first establish a prima facie case of age discrimination, and may do so by one of three ways, including the presentation of direct evidence of discriminatory intent. Id.; see also Eskra v. Provident Life & Accident Ins. Co., 125 F.3d 1406, 1411 (11th Cir. 1997) (noting that in ADEA cases a plaintiff must first establish a prima facie case of discrimination).

The fact that a plaintiff has established a prima facie case under the ADEA with direct evidence, however, does not in and of itself warrant summary judgment against an employer.

Rather, in the face of direct evidence, the burden then shifts to an employer to prove that the same challenged employment decision would have been made absent any discriminatory intent. Carter, 870 F.2d at 581-82; see also Eskra, 125 F.3d at 1411 ("If the plaintiff presents direct evidence that a discriminatory animus played a significant or substantial role in the employment decision, the burden shifts to the employer to show that the decision would have been the same absent discrimination") (citations omitted). To satisfy its burden, an employer must prove by a preponderance of the evidence that the same decision would have been reached even absent the presence of the alleged discriminatory factor. Lee v. Russell County Bd. of Education, 684 F.2d 769, 774 (11th Cir. 1982). If an employer meets this burden, summary judgment in its favor is warranted. See, e.g., Dingman v. Delta Health Grp., 26 F. Supp. 2d 1349, 1352 (S.D. Fla. 1998); Lewis v. YMCA, 53 F. Supp. 2d 1253, 1262-1263 (N.D. Ala. 1999) (where evidence showed that defendant would have made same employment decision even absent considerations of plaintiff's ADEA suit, defendant entitled to summary judgment).[2]

As a threshold matter, Defendant "concedes that Plaintiff has presented direct evidence of discrimination, which the Court has to accept for present purposes." (D.E. 23 at 7.) Thus, for purposes of this Motion, the Court assumes without deciding that Rodriguez's alleged statements that he needed "someone younger" whom he could pay less,

---

[2] As such, the Court rejects Plaintiff's argument that Defendant's "concession that [Plaintiff] has direct evidence of age discrimination is itself sufficient to create a genuine fact issue necessitating a trial." (See D.E. 41 at 11.)

13

if actually made by Rodriguez to Plaintiff on the day of Plaintiff's termination, constitute direct evidence of discrimination sufficient to satisfy Plaintiff's burden of establishing a prima facie case.[3]  Notably, these statements constitute the only evidence upon which Plaintiff relies in support of her ADEA claim; there is no evidence that Rodriguez ever made any other age-related comments on any other day except the day on which Plaintiff was terminated, and Rodriguez is the only person whom Plaintiff accuses of age discrimination.

Regardless of whether Rodriguez's alleged statements constitute direct evidence of

---

[3] Despite Defendant's concession, the Court wonders whether such statements in fact amount to more than circumstantial evidence. "Direct" evidence of discrimination is evidence which, if believed, would prove the existence of a fact without inference or presumption. Carter, 870 F.2d at 581-82.  Nonetheless, it is important to recognize that "not every comment concerning a person's age presents direct evidence of discrimination." Young, 840 F.2d at 829.  Rather, "direct evidence is composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." Rojas v. Florida, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) (citations omitted).  Significantly, "Congress made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence." Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 611 (11th Cir. 1987).  Here, Plaintiff, Kennedy, and Lagarde all testified that Rodriguez's alleged comments about Plaintiff's age on April 5, 2006 were made in conjunction with other comments regarding Plaintiff's ability; for example, Plaintiff herself testified that Rodriguez also told her that he needed someone that was computer savvy and a good writer when she was terminated; Kennedy testified that Rodriguez told Plaintiff that she was "very old" and "very inept," and LaGarde testified that she heard Rodriguez say to Plaintiff that things weren't "working out" with her and that she was "too old."  Under these circumstances, the Court questions whether Rodriguez's alleged statements can be considered "direct" evidence that Plaintiff was fired because she was old. See, e.g., Templeton v. Bessemer Water Serv., 154 Fed. Appx. 759, 762 (11th Cir. 2005) (comments that defendant wanted to hire a younger person in context of questioning defendant's health and vigor constituted circumstantial, not direct, evidence, as the context implicated "Congress's concern not to prohibit employment decisions based on legitimate concerns related to the health and vigor of employees"); see also Simmons v. McGuffey Nursing Home, Inc., 619 F.2d 369, 371 (5th Cir. 1980) (statement overheard by witness that defendant wanted a younger man as plaintiff's replacement did not mean that he was terminated because of his age under the circumstances).

discrimination, however, the Court finds that Defendant has established by a preponderance of the evidence that it would have terminated Plaintiff based on her unsatisfactory performance and conduct problems even absent any consideration of her age. See Dingman, 26 F.Supp. 2d at 1351 (citing Lee, 684 F.2d at 774).[4]  First, undisputed evidence in the record makes it overwhelmingly clear that, in January of 2006, both Chea and Rodriguez desired to terminate Plaintiff solely because her work performance was unsatisfactory. Various incidents regarding Plaintiff's work performance occurred beginning shortly after Plaintiff commenced working for Defendant in June of 2004.  These incidents include Plaintiff's contacting of a donor without first consulting Chea shortly after she began working for Defendant, for which Chea and Rodriguez reprimanded Plaintiff; Plaintiff's failure to provide timely weekly reports to Chea on several occasions, for which Chea reprimanded Plaintiff at least once in an e-mail on April 29, 2005; Plaintiff's failure to complete the substance of the reports in the manner Chea wanted, for which Chea

---

[4] The Court further rejects Plaintiff's argument that Defendant waived its right to argue that it would have fired Plaintiff regardless of her age because it did not assert this defense in its Answer, in violation of Federal Rule of Civil Procedure 8(c). As Defendant has argued and demonstrated, Plaintiff was aware of Defendant's position that Plaintiff was terminated due to poor performance early on in, and throughout, the discovery process. (See, e.g., D.E. 51 at 3-5.) Thus, Plaintiff cannot genuinely argue that she was not prepared to properly litigate this issue or that she was otherwise prejudiced simply by Defendant's failure to present its argument as an affirmative defense in the Answer. See Hassan v. U.S. Postal Serv., 842 F.2d 260, 263 (11th Cir. 1988) (noting that the purpose of Rule 8(c) is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it, and concluding that where plaintiff had notice of issue during discovery, plaintiff was not prejudiced in light of defendant's failure to comply with Rule 8(c)). As such, the Court may properly consider evidence of Plaintiff's poor performance on this Motion. See id.; see also Grant v. Preferred Research, Inc., 885 F.2d 795, 797-98 (11th Cir. 1989).

reprimanded Plaintiff in a memorandum dated January 20, 2006; and Plaintiff's unsatisfactory work on an award application, which Chea was disappointed about and so informed Plaintiff on January 13, 2006. Moreover, it is clear from the record that Chea's relationship with Plaintiff was less than ideal throughout Plaintiff's employment with Defendant; for example, Chea's formal evaluation of Plaintiff in August of 2005 indicated that Chea felt that Plaintiff required improvement in several areas, including her attitude, and, as reflected by a memorandum from Chea to Rodriguez, Chea found Plaintiff difficult to manage. The strained relationship between Plaintiff and her supervisor is further evidenced by the fact that Plaintiff and Chea met with a corporate "coach" in an attempt to improve their working relationship. In addition, the record demonstrates that Chea notified Rodriguez in writing of problems with Plaintiff's work performance on at least three occasions as far back as March 4, 2005. It is clear from the record that these problems, and Chea's strained relationship with Plaintiff, led to Chea recommending, as documented in a weekly report Chea sent to Rodriguez on January 13, 2006, that Plaintiff be terminated in January of 2006, a decision which Rodriguez initially approved. Of further significance, there exists no evidence in the record that the initial decision to fire Plaintiff was even in part motivated by Plaintiff's age; notably, Plaintiff does not claim that Chea, who recommended her termination, did so in whole, let alone in part, because of Plaintiff's age. Nor does the Court find there to be any evidence that Rodriguez's initial approval of Plaintiff's termination in January of 2006 was motivated in any way by Plaintiff's age. There is simply no evidence

that the decision to terminate Plaintiff in January of 2006 was motivated by anything other than Chea's dissatisfaction with Plaintiff's work performance and conduct.

In addition, Plaintiff does not challenge evidence that she was not terminated in January of 2006 because two employees intervened on her behalf; that Plaintiff was given different responsibilities by Rodriguez; and that, in the first month of these different responsibilities, Plaintiff called in sick twice to work without explaining the reasons to Rodriguez, which he felt displayed bad judgment on Plaintiff's part. Further, it is undisputed that Plaintiff then made several errors in a draft proposal to a potential donor; that Rodriguez was unhappy with Plaintiff's work in that regard; that, as a result, on April 4, 2006, Rodriguez sent one e-mail to Hernandez indicating that, unless his impression of Plaintiff changed, he planned to fire Plaintiff because Plaintiff lacked adequate writing and preparation skills for the job; and that, after Plaintiff sent the proposal containing errors which Rodriguez had asked Plaintiff to fix, but which Plaintiff neglected to fix, Rodriguez sent a second e-mail later that evening to Hernandez indicating that he would fire Plaintiff. These e-mails, which were submitted by Defendant in support of this Motion, are devoid of any reference to Plaintiff's age, and do no indicate that Rodriguez's desire to terminate Plaintiff was motivated in any way by her age; rather, the e-mails quite plainly indicate that Rodriguez desired to terminate Plaintiff because she lacked adequate writing and preparation skills for the job. It is further undisputed that, the very next day, on April 5, 2006, Rodriguez fired Plaintiff.

Lastly, the Court notes that Plaintiff herself testified during her deposition that she was not surprised that Rodriguez fired her because she knew Chea had been complaining about her. Plaintiff also testified that, upon her termination, she was aware of, and embarrassed about, the errors she had made in the proposal the day before.

In light of these undisputed facts in the record, there can be no reasonable doubt that Defendant would have terminated Plaintiff based on her unsatisfactory performance and conduct even absent any consideration of her age.[5] Summary judgment is therefore granted in favor of Defendant on Plaintiff's ADEA claim. See Dingman, 26 F. Supp. 2d at 1352 (granting summary judgment in employer's favor where employer established by a

---

[5] The Court notes that it need not defer to or even make reference to the EEOC's conclusory written determination that there was "reasonable cause" to believe Plaintiff was fired because of her age. The Eleventh Circuit has made it clear that an EEOC letter of determination which, like the one at issue here, does not describe the specific evidence relied upon by the EEOC in making its determination, possesses minimal probative value and may be excluded. Lee v. Executive Airlines, Inc., 31 F. Supp. 2d 1355, 1357 (S.D. Fla. 1998) (excluding EEOC letter as highly conclusory where it did not outline, even summarily, the evidence upon which the EEOC relied for its conclusion that there was reasonable cause to believe that a violation occurred); see also Kincaid v. Bd. of Trs., 188 Fed. Appx. 810, 817 (11th Cir. 2006) (citing Moore v. Devine, 767 F.2d 1541, 1549-51 (11th Cir. 1985)) (where EEOC determination merely stated conclusion that defendant discriminated against plaintiff based on age and race but did not provide analysis as to why it reached that conclusion, EEOC determination failed to raise a genuine issue of material fact regarding discrimination claims, and court was not required to defer to or make reference to EEOC determination); Rudy v. Miami-Dade County, Case No. 01-6354-CIV, 2002 U.S. Dist. LEXIS 28265, at *24-25 (S.D. Fla. Feb. 5, 2002) (concluding that EEOC letter was conclusory and had little probative value where letter did not outline the evidence upon which it relied for its conclusion and did not cite to any specific evidentiary basis to support its findings or conclusion). In any event, even if the Court were to consider the EEOC determination submitted by Plaintiff, in light of the undisputed facts on the record which, as described above, establish by a preponderance of the evidence that Defendant would have terminated Plaintiff based on her unsatisfactory performance and conduct problems regardless of her age, the Court finds that the EEOC determination fails to raise a genuine issue of material fact in this case.

preponderance of the evidence that it would have terminated plaintiff based on his unsatisfactory performance and conduct problems even absent any consideration of his age); cf. Wright v. Southland Corp., 187 F.3d 1287, 1304 (11th Cir. 1999) (summary judgment inappropriate where plaintiff employed for seventeen years presented direct evidence of statements made approximately three months before plaintiff's discharge that plaintiff should not be in his position because of his age, and that he may be getting too old to understand new computer programs, but where the record contained no evidence that plaintiff in fact had difficulty with computer programs).

### C. Plaintiff's Claim under the FCRA

Finally, Plaintiff claims that Defendant discriminated against her in violation of the Florida Civil Rights Act ("FCRA"). Age discrimination claims brought pursuant to the FCRA are analyzed under the same framework as ADEA claims, and thus, for the reasons discussed above, Defendant is entitled to summary judgment on Plaintiff's state law discrimination claim as well. See, e.g., Zaben v. Air Prods. & Chems., 129 F.3d 1453, 1455 n.2 (11th Cir. 1997) (noting that analysis for age discrimination claim under FCRA is same as claim under ADEA). Accordingly, it is:

**ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Summary Judgment (D.E. 23) is **GRANTED in its entirety.**

2. The Amended Complaint (D.E. 2) is **DISMISSED with prejudice**.

3. All other pending motions, including Defendant's Motion to Strike EEOC Letter of Determination (D.E. 50), filed on August 11, 2008, and Plaintiff's Motion to Compel JMF to Update its Statement of Interested Persons (D.E. 59), filed on September 2, 2008, are **DENIED as moot.**

4. This case is **CLOSED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 26th day of September, 2008.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**